## MORRELL vs. QUARLES.

[ACTION TO RECOVER REWARD FOR APPREHENSION OF FUGITIVE FROM JUSTICE.]

1. *Validity of promise to reward public officer for discharge of official duty.*—A promise to reward a public officer, aside from his legal compensation, for the discharge of an official duty, is void on grounds of public policy ; but this principle is not applicable, where a police-officer of another State, having there arrested a person charged with the commission of a felony in this State, sues for the reward offered for his apprehension, and it is not shown to have been his legal duty to arrest fugitives from another State.

2. *Arrest of fugitives from justice in another State.*—A fugitive from justice in Alabama may be arrested in Louisiana, or any other State into which he may escape, through the agency of the judicial tribunals of the latter State, without the order of its governor, or the demand of the governor of Alabama.

3. *Consideration of contract.*—Where one person offers a reward, and another, knowing of the offer, does the lawful thing for the performance of which the reward is offered, there is a sufficient consideration to support an action for the recovery of the reward.

APPEAL from the Circuit Court of Dallas.

Tried before the Hon. NAT. COOK.

THE original complaint in this case was as follows :

"John Morrell *vs.* Wm. H. Quarles. } The plaintiff claims of the defendant the sum of one thousand dollars, for the apprehension of Charles A. Bell in the city of New Orleans, State of Louisiana, on or about the 16th November, 1855, and procuring his commitment or confinement in the jail in said State and city, the same being within the United States ; it being the amount of a reward offered and published by the defendant, on the 1st November, 1855, for the apprehension and confinement of said Charles A. Bell in any jail in the United States, so that he could be brought to justice."

An additional count was afterwards put in, by way of amendment, in the following words :

" The plaintiff claims of the defendant the sum of one thousand dollars, due from the defendant to the plaintiff

for the apprehension by him of Charles A. Bell, who was charged by said advertisement with an attempt to assassinate him, the said defendant, of Cahaba, Dallas county, Alabama, on the 20th October, 1855; said Bell being the person described in a publication made by said defendant, and posted in printed hand-bills, and circulated by said defendant, and at his instance, at divers places in the State of Alabama, in the words and figures following, to-wit," (setting out the advertisement.) "And plaintiff avers, that said Charles A. Bell, before that time, to-wit, on the 20th October, 1855, had been guilty of an assault with intent to murder said defendant in the State of Alabama, and was a fugitive from justice; all of which was well known to plaintiff, who avers that, knowing the same, he did arrest and apprehend said Bell on the 16th November, 1855, in the city of New Orleans, State of Louisiana, plaintiff being one of the policemen of said city at that time, and procured his legal commitment to prison in said city of New Orleans, and actually delivered said Bell into the custody of the keeper of said prison, in order that he might be brought to justice; and the said Charles A. Bell, so being in custody, upon the requisition of the governor of the State of Alabama, delivered over into the custody of one Robert A. McGibbony; and the said Bell being thus in legal custody, the said McGibbony did proceed with him to the county of Dallas, in the State of Alabama, and did there detain him until he was duly committed to the custody of the sheriff of said county, who took said Bell into his custody, at the instance of the defendant, under a *capias* in his hands, issued from the office of the clerk of the circuit court of said county of Dallas, on the 27th November, 1855, for the offense described in said reward so offered; and the said Bell, being so in custody of the sheriff, was, by Hon. James B. Clark, chancellor of the State of Alabama, discharged from the custody of the said sheriff, upon his giving bond, in the sum of five thousand dollars, for his appearance at the next term of the circuit court for said county of Dallas, to answer said charge; which bond being executed by said Bell, and approved by said

chancellor, he was discharged; of all which said defend-
ant had due notice.　And said plaintiff having demanded
said reward after the ——— of said Bell, as before stated,
said defendant refused to pay the same; and said sum of
one thousand dollars, with interest thereon from the 16th
November, 1855, is still due and owing by defendant to
plaintiff."

The defendant demurred, "in short by consent," to
each count of the amended complaint, and assigned the
following causes of demurrer: To the first count—"1st,
because it does not allege that said Bell was charged in
Cahaba, or elsewhere, with any offense; 2d, because it
does not allege that Bell's offense, if any, was committed
in the State of the defendant's residence; and, 3d, because
it does not show that the arrest and confinement of Bell
was with a knowledge of the reward, or in consideration
of it."　To the second count the same causes of demurrer
were assigned as to the first, with the following additional
assignments: "4th, because it shows that the plaintiff
was an officer of police of New Orleans, and as such
arrested Bell; 5th, because it shows that Bell's offense,
if any, was committed in Alabama, and that he was
arrested in Louisiana, but does not show that it was by
order of the governor of Louisiana, or on demand of the
governor of Alabama—the only legal mode of arresting
him out of Alabama; 6th, because it shows the offense, if
any, in Alabama, and Bell's arrest in Louisiana, in viola-
tion of the law of the latter State, and that the contract
sued on is illegal and void; and, 7th, because it shows the
contract sued on to be void for want of consideration."

The court sustained the demurrer, and the plaintiff
then took a non-suit; reserving an exception to the ruling
of the court, and here assigning the same as error.

ALEX. WHITE, for appellant.—1. The offer of a reward
for the detention of an offender, the recovery of property,
and the like, is a proposal by the person making it to all
other persons, which may be accepted, at any time before
it is revoked, by any person capable of performing the
service; and such offer on the one side, and its acceptance

by performance by the other, constitute a valid contract, on good consideration, which the law will 'enforce.—Loring v. City of Boston, 7 Metcalf, 411; Symmes v. Fra zier, 6 Mass. 344 ; England v. Davidson, 11 Ad. & El. 856 ; Williams v. Carwardine, 4 Barn. & Ad. 621.

2. No question of public policy, or illegality of consideration, arises in the case. It is admitted, that a public officer cannot recover any other compensation than that fixed by law, for the performance of a legal duty; and the reason is, that it would be impolitic to allow him to do so.—Hatch v. Mann, 15 Wendell, 44; Stotesbury v. Smith, 2 Burr. 924; Gilman v. Lewis, 12 Ohio, 281 ; Shattuck v. Woods, 1 Pick. 175 ; Carroll v. Tyler, 2 Har. & Gill, 54; Smith v. Smith, 1 Bailey, 70. But that principle has no application here ; because a police-officer in Louisiana was under no legal obligation to arrest an offender against the laws of Alabama, and was entitled to no legal fees for such apprehension.

Geo. W. Gayle, contra.—The first count of the complaint is defective, because it does not show that Bell was charged with the commission of an offense in Alabama or elsewhere.—Story's Conflict of Laws, §§ 226–28, and notes; 1 Bishop's Crim. Law, § 594, note 6 ; Story on Contracts, § 569 ; Findlay v. Pruitt, 9 Port. 195; 10 Serg. & Rawle, 125. It was defective for the further reason, that it did not show that the arrest was made with a knowledge of the offering of the reward.—Chitty on Contracts, 9, 10, note 2; Stamper v. Temple, 6 Hump. 113; 6 Mass. 344.

2. The second count is obnoxious to the same objections, and to these additional objections : 1st, it shows that the plaintiff was a police-officer, and arrested Bell in discharge of his official duty; and, 2d, it does not show that the arrest was made by order of the governor of Louisiana, or on demand of the governor of Alabama. That the first objection is fatal to the recovery of the reward by the officer, see Story on Contracts, § 571; Callahan v. Hallett, 1 Caines' R. 104; Mitchell v. Vance, 5 Monroe, 529; Smith v. Whildin, 10 Barr, 39; 6 Humph. 113.

That fugitives from justice are citizens of the State in which they are found, and can only be arrested under its laws, on copy of indictment and affidavit, see 2 Kent's Com. 32, note *c*; 1 *ib*. 36; 9 Wendell, 212.

A. J. WALKER, C. J.—The amended complaint in this case avers, that Charles A. Bell committed an assault with intent to murder the defendant in the State of Alabama; that afterwards the defendant published and circulated in printed hand-bills an offer of a reward of one thousand dollars for the apprehension of Bell, and his confinement in any jail of the United States, so that upon due notice he could have him brought to justice at his further expense; that knowing those facts, the plaintiff, being a police-officer in New Orleans, in the State of Louisiana, arrested Bell in that city, and procured his legal commitment to prison in that city; and that afterwards, upon the requisition of the governor of the State of Alabama, Bell was brought from New Orleans, and delivered to the sheriff of Dallas county, who, by virtue of a *capias* for the offense described in the offer of the reward, at the instance of the defendant, took Bell into custody. This statement of the allegations of the amended complaint shows that it contains the averments, the want of which is the ground of the first, second and third assignments of demurrer. It is, therefore, not necessary to examine them further in considering the amended complaint.

[1. The fourth assignment of demurrer is, that the plaintiff was a police-officer, and arrested the offender in that capacity. A promise to reward a public officer, aside from a compensation directed by the law, for the discharge of an official duty, is void. Such a promise is held void upon grounds of public policy.—Stotesbury v. Smith, 2 Burr. 924; Hatch v. Mann, 15 Wend. 44; Stamper v. Temple, 6 Hum. 113; Callagan v. Hallett, 1 Caines' R. 103; Smith v. Whildin, 10 Penn. (St.) 39. But this principle is not available on this demurrer; for the complaint does not show that it was a legal duty of police-officers in the State of Louisiana, to arrest fugitives from another

State. It is said, that the plaintiff made the arrest, "being one of the policemen of said city of New Orleans at that time." This does not imply that the plaintiff, in making the arrest, acted in obedience to any duty imposed upon him by the law; and we know of no principle which would justify the presumption that such a duty was imposed upon the policemen of New Orleans by law.

[2.] The 5th assignment of demurrer presents the single question, that the arrest in Louisiana was not made by order of the governor of Louisiana, or on demand by the governor of Alabama; and that it could only be legally made by order of the governor of Louisiana, on demand of the governor of Alabama.

Any private person, without a warrant, may arrest a felon, in the State within which the felony was committed. In doing so, he would act by permission, and not under command of the law; but, nevertheless, the arrest would be a legal act.—1 Chitty's Crim. Law, 17; 2 Hawk. P. Cr. 117; 1 Hale's P. C. 588. Whether the same legal permission continues after the felon has escaped into another State, is a question which we do not decide, and which is not necessarily involved in the assignment under consideration.

The constitution of the United States is the federative covenant of the States. The second section of the fourth article of that instrument creates a right to demand persons, "charged in any State with treason, felony, or other crime, who shall flee from justice, and be found in another State;" and also a corresponding obligation to surrender such persons. This obligation to surrender fugitives from justice is a law unto the respective States. Since the States are thus bound to surrender fugitives, the appropriate judicial officers have, upon common-law principles, authority to aid the States in the fulfillment of the obligation, and to enable them to discharge with effect the duty of extradition. This is done by issuing warrants of arrest, upon appropriate evidence, in anticipation of the demand of the executive of the State from which the fugitive escaped; and by virtue of such warrant detaining the fugitive for a reasonable time, to await the demand

and order of delivery. The principle upon which this conduct of the judicial tribunals is authorized, is well established, both in England and America.—1 Kent's Com. 36–37, and notes; Washburn's case, 4 John. Ch. 106; Holmes v. Governor of Vermont, 14 Peters, 540; Commonwealth v. Deacon, 10 S. & R. 125; *In re* Wm. Fetter, 3 Zabris. 311; State v. Buzine, 4 Har. 572; Holmes, *Ex parte*, 12 Verm. 631; 1 Opinions of Attorneys-General, 384–392; 2 *ib.* 832; *Ex parte* Watson, 2 Cal. 59.

Chancellor Kent, in Washburn's case, went so far as to maintain the jurisdiction in reference to fugitives from a foreign country, even in the absence of treaty stipulations; but this doctrine is inconsistent with the weight of authority, and, perhaps, also with the principles which control the executive department of the general government. All the decisions, and every principle of convenience, public policy and good neighborship, concur in supporting the jurisdiction, to the extent above indicated, of the judicial tribunals of governments, which, like those of the different States of this union, form parts of the same confederacy, and are reciprocally bound by a most solemn covenant for the extradition of fugitives. There might have been a legal arrest of Bell through the agency of the judicial tribunals of Louisiana, without the demand of the governor of Alabama, or the order of the governor of Louisiana; and therefore the fifth specific ground of demurrer was not well taken. '

The sixth ground of demurrer ought not to have been sustained, because it does not appear that any law of Louisiana was violated in making the arrest.

[3.] The remaining assignment of demurrer is, that the contract is void for want of consideration. The authorities fully maintain, that if one offer a reward, and another, knowing of the offer, shall do the lawful thing proposed to be rewarded, there is a contract supported by a consideration; and that the assent to the contract is given by the party claiming the reward, when he performs the designated act.—England v. Davidson, 11 Ad. & El. 856; Symmes v. Frazier, 6 Mass. 344; Loring v. City of Boston, 7 Met. 409; Chitty on Con. 474, note *s*.

All the assignments of demurrer to the amended complaint should have been overruled, and the court erred in sustaining the demurrer.

The nonsuit is set aside, the judgment of the court below reversed, and the cause remanded.