## BOARD OF COMMISSIONERS OF CLINTON COUNTY v. DAVIS.

[No. 19,962. Filed January 27, 1904.]

REWARDS.—*Pleading.*—*Elections.*—*Bribery.*—A complaint in an action to recover a reward provided by statute need not aver that plaintiff rendered the services with a knowledge that the reward was offered, or with an intention to recover the same. *p. 62.*

ELECTIONS.—*Bribery.*—*Reward for Furnishing Evidence.*—Neither the vote buyer nor the vote seller is entitled to the benefit of the provisions of ₴2330 Burns 1901 that "any person or persons having knowledge or information of the violation of the provisions of this act, who shall procure or furnish or cause to be procured or furnished the testimony necessary to secure a conviction of" any person who sells, barters or offers to sell or barter his vote, or offers to refrain from voting, shall be entitled to a reward of $100, payable out of the treasury of the county,

and the vote buyer can not recover said reward although he furnished the testimony which secured the conviction of the vote seller. *pp. 62-69.*

PLEADING.—*Answer.*—Where a paragraph of answer alleges facts sufficient to constitute a defense to the action, the mere fact that it purports to be only a partial answer does not render it insufficient as to such part. *p. 69.*

From Superior Court of Tippecanoe County; *H. H. Vinton*, Judge.

Action by Robert Davis against the Board of Commissioners of Clinton County. From a judgment for plaintiff, defendant appeals. *Reversed.*

*H. C. Sheridan, J. F. Hanly, W. R. Wood* and *Benjamin Crane*, for appellant.

*T. H. Palmer, T. H. Palmer, Jr., E. P. Hammond, W. V. Stuart, D. W. Simms* and *F. P. Mount*, for appellee.

MONKS, J.—This action was brought by appellee, under section two of the act of March 1, 1899 (Acts 1899, p. 381, §2330 Burns 1901), to recover nine separate rewards for furnishing information which secured the conviction of nine persons for a violation of section one of said act (§2329 Burns 1901). It is provided by section one of said act of 1899 that anyone who "sells, barters or offers to sell or barter his vote, or offers to refrain from voting for any candidate or candidates at any general, special or primary election or convention, * * * or who shall accept any money, property or thing of value, with the promise or pretense of voting for, or refraining from voting for any candidate or candidates, shall upon conviction therefor be," etc. The second section provides that "any person or persons having knowledge or information of the violation of the provisions of this act, who shall procure or furnish or cause to be procured or furnished the testimony necessary to secure a conviction of the person or persons violating the same shall be entitled to a reward of $100 payable out of the treasury of the county in which such conviction shall be had and the right to such reward shall be a valid claim against such county."

Appellant's demurrer for want of facts to each of the nine paragraphs of complaint was overruled. Appellant filed an answer in five paragraphs, the first of which was a general denial. The court sustained appellee's demurrer for want of facts to each paragraph of answer except the first. A trial of said cause resulted in a verdict, and, over a motion for a new trial, a judgment in favor of appellee. The court's rulings on the demurrers, and the action of the court in overruling appellant's motion for a new trial, are called in question by the assignment of errors.

It is claimed by appellee that the pleadings are not in the record, and that for this reason the judgment must be affirmed. The reasons urged by appellee to sustain this contention are the same as those set forth in *Southern Ind. R. Co.* v. *Martin,* 160 Ind. 280, and *Perry, etc., Stone Co.* v. *Wilson,* 160 Ind. 435, and upon the authority of those cases we hold that the pleadings are properly in the record.

The objection urged against each paragraph of the complaint is that it is not averred that appellee "rendered the services with a knowledge that the reward was offered, or with the intention to recover the same." Such allegations are unnecessary in this State—at least when the reward is offered in a public statute. *Dawkins* v. *Sappington,* 26 Ind. 199, 200; *Board, etc.,* v. *Wood,* 39 Ind. 345, 351; *Everman* v. *Hyman,* 26 Ind. App. 165, 167-169, 84 Am. St. 284, and cases cited. See, also, *Auditor* v. *Ballard,* 9 Bush (Ky.) 572, 15 Am. Rep. 728; *Eagle* v. *Smith,* 4 Houst. (Del.) 293.

It appears from the allegations of the second, third, fourth, and fifth paragraphs of answer that appellee procured each person named in the nine paragraphs of complaint to violate §2329, *supra,* to sell his vote; that he induced each of said persons to commit said crime; and in some of said paragraphs of answer it is alleged that he induced them to commit said crime with the intention

of furnishing the testimony necessary to secure a conviction, and, when convicted, to recover from the county the reward provided by §2330, *supra.* Said paragraphs of answer proceed upon the theory that while the law offers a reward to any person who shall procure or furnish, or cause to be procured or furnished, the testimony necessary to secure a conviction of the offender, it was not intended to reward the person who bought the vote, or who procured the same to be done, or in any way aided or abetted therein.

Appellee insists that the vote buyer comes within the terms of the statute, and for that reason the demurrer for want of facts was properly sustained to said paragraphs of answer. Said §2330, *supra,* provides that "any person or persons having knowledge or information of the violation of the provisions of this act, who shall procure or furnish or cause to be procured or furnished the testimony * * * shall be entitled to a reward." As counsel for the parties do not challenge the validity of said section, we may, without considering that question, determine its proper interpretation. *Lewis* v. *Albertson,* 152 Ind. 693; *Williams* v. *Citizens, etc., Co.,* 153 Ind. 496; *Boyd* v. *Brazil Block Coal Co.,* 152 Ind. 543, 544. The language employed is broad enough to include not only the vote buyer, as contended by appellee, but also the vote seller. Was this the legislative intent? The natural import of the words of a statute according to their common use, when applied to the subject-matter, is to be considered as expressing the legislative intent unless it is repugnant to the acknowledged principles of justice and sound public policy, in which case the words ought to be restrained or enlarged so as to comport with those principles, unless the intention of the legislature is clearly and manifestly expressed to the contrary. This is because it will not be presumed that the legislature will violate principles of public policy, but if such intention is clearly expressed, and

is not obnoxious to any provision of the Constitution, it must have the force of law. · *Opinion of the Justices,* 7 Mass. 523-526; *Hittinger* v. *Inhabitants of Westford,* 135 Mass. 258, 259; *Dixon* v. *Western Union Tel. Co.,* 68 Fed. 630, 634, 635; *Maxwell* v. *Collins,* 8 Ind. 38; Black, Interp. of Laws, 107, 108.

The constitution of Massachusetts provided that the elector of a senator must be an inhabitant of the senatorial district in which he votes, and the elector for representative must have resided one year in the town before he could there be a voter. It was held in *Opinion of the Justices, supra,* pp. 524-526, that while the words "inhabitants" and "residents" may comprehend aliens, they must be restrained to such inhabitants or residents as are citizens. The justices said at page 526: "This construction given to the constitution, is analogous to that given to several statutes. Creditors may levy their execution on lands of their debtors, and hold them in fee simple, unless redeemed. Although the words of the statute are general, yet they are not deemed to include alien creditors. If they were so deemed, then under color of a judgment and execution, the rule of the common law, prohibiting an alien from holding lands against the commonwealth, would be defeated. So a general provision is made for the dower of widows. Yet it is not supposed that a woman, who is an alien, can claim, and have assigned to her, dower in lands of her deceased husband." For this reason, it is held that a statute should not be so construed as to authorize or permit a man to be a judge in his own case, or to determine his right to an office of trust or profit, unless the act so declares in express words. *Day* v. *Savadge,* Hob. *85; *Reg.* v. *Owens,* 2 El. & El. 86, 91-93, 105 Eng. C. L. 85, 90-92; *Mersey Docks* v. *Gibbs,* 1 L. R. H. L. 93, 110; *Commonwealth* v. *M'Closkey,* 2 Rawle (Pa.) 369, 372-376; Black, Interp. of Laws, 107; 1 Blackstone's Comm., *91; Broom's Legal Maxims (7th Am. ed.), 116-121.

It was said in 1 Blackstone's Comm., *91: "Thus if an act of parliament gives a man power to try all causes that arise within his manor of Dale; yet, if a cause should arise in which he himself is party, the act is construed not to extend to that, because it is unreasonable that any man should determine his own quarrel. But, if we could conceive it possible for parliament to enact, that he should try as well his own causes as those of other persons, there is no court that has power to defeat the intent of the legislature, when couched in such evident and express words, as leave no doubt whether it is the intent of the legislature or no."

It has been held, upon grounds of public policy, that public corporations, such as counties, townships, cities, towns, school corporations, and public officers are not subject to garnishment under a law providing that "all persons and corporations are subject to garnishment." To make such corporations and officers subject to garnishment, the act must so provide in express words. *Wallace* v. *Lawyer,* 54 Ind. 501, 505-509, 23 Am. Rep. 661, and cases cited; *Switzer* v. *City of Wellington,* 40 Kan. 250, 19 Pac. 620, 10 Am. St. 196 and note; *First Nat. Bank* v. *City of Ottawa,* 43 Kan. 294, 23 Pac. 485; *School Dist.* v. *Gage,* 39 Mich. 484, 33 Am. Rep. 421; *McLellan* v. *Young,* 54 Ga. 399, 21 Am. Rep. 276; *Dotterer* v. *Bowe,* 84 Ga. 769, 11 S. E. 896; *Mayor, etc.,* v. *Root,* 8 Md. 95, 63 Am. Dec. 692 and note; Rood, Garnishment, §§18, 19, 25-27; Shinn, Attachment, §§500, 505.

It is also held, upon grounds of public policy, that a law which provides that "mechanics, and all persons performing labor or furnishing materials for the construction or repair of any building, * * * may have a lien separately or jointly upon the building which they may have constructed or repaired, * * * and on the interest of the owner in the lot or land on which it stands,"

does not authorize such lien upon public property devoted to public use. *Board, etc.,* v. *O'Conner,* 86 Ind. 531, 535-538, 44 Am. Rep. 338, and cases cited; *Fatout* v. *Board, etc.,* 102 Ind. 223, 231, 232; *Lowe* v. *Board, etc.,* 94 Ind. 553, and cases cited; *Secrist* v. *Board, etc.,* 100 Ind. 59; Dillon, Mun. Corp. (4th ed.), §577.

It was said by this court in *Board, etc.,* v. *O'Conner, supra,* page 536: "It is true that the statute of this State provides in terms for the acquisition and enforcement of a mechanic's lien upon and against 'any building;' but, broad and comprehensive as are the provisions of the statute, it must be construed in such manner as will not contravene settled principles of public policy. * * * There is no provision to the effect that such a lien may be acquired or enforced upon or against public property held for public use; and, in the absence of such provision, we must hold * * * that such a lien can neither be acquired nor enforced upon or against such property held for such use."

Courts, in construing offers of reward made for the apprehension of persons charged with crime, have uniformly held that a ministerial officer, who in the performance of his duties as such, apprehends the criminal, is not entitled to the reward. And in cases where rewards have been offered for the return of stolen property, it has been held that a sheriff or other peace officer who secured the property and returned it to the owner is not entitled to the reward, even though the offer was general to all persons. This is upon the ground that it is against public policy to allow a public officer for the discharge of his duties any compensation except that fixed by law. *Davies* v. *Burns,* 87 Mass. 349, 353; *Pool* v. *City of Boston,* 59 Mass. 219-221; *Warner* v. *Grace,* 14 Minn. 487; *Day* v. *Putnam Ins. Co.,* 16 Minn. 408; *Hatch* v. *Mann,* 15 Wend. 44; *Smith* v. *Whildin,* 10 Pa. St. 39, 49 Am. Dec. 572; *Gilmore* v. *Lewis,* 12 Ohio 281; *Hogan* v. *Stophlet,* 179 Ill. 150, 156-160, 53 N. E. 604, 44 L. R. A. 809, and cases cited;

Stacy v. State Bank, 5 Ill. 91; Ring v. Devlin, 68 Wis. 384; 32 N. W. 121; Brown v. Godfrey, 33 Vt. 120; Lees v. Colgan, 120 Cal. 262, 52 Pac. 502, 40 L. R. A. 355, and cases cited; St. Louis, etc., R. Co. v. Grafton, 51 Ark. 504; 11 S. W. 702, 14 Am. St. 66; In re Russell, 51 Conn. 577; 50 Am. Rep. 55; Smitha v. Gentry (Ky.), 45 S. W. 515; 42 L. R. A. 302; Miller v. Hogeboom, 56 Neb. 434, 437, 76 N. W. 888; Morrell v. Quarles, 35 Ala. 544; Hayden v. Souger, 56 Ind. 42, 26 Am. Rep. 1 and note, pp. 5-10.

It is a maxim of the law that no man shall be permitted to profit by or take advantage of his own wrong, or to found any claim upon his own iniquity. Broom's Legal Maxims (7th Am. ed.), 279-297. Under this maxim it has been uniformly held that a person who is connected with an alleged theft, either as a participator in the felonious taking, or in the concealing of the stolen goods, can not recover a reward offered for their return. Jenkins v. Kelren, 78 Mass. 330, 332, 74 Am. Dec. 596. It is also held that any person who aids or abets in the commission of a crime, or advises or procures it to be committed, can not recover a reward offered for the apprehension of the person who committed the same. Hassan v. Doe, 38 Me. 45; Jenkins v. Kelren, supra. Under this maxim it is held that one who sets fire to his own building can not recover the insurance thereon, and that a beneficiary in a life insurance policy who murders the person insured can not recover on such policy. Schmidt v. Northern Life Assn., 112 Iowa 41, 44, 83 N. W. 800, 51 L. R. A. 141, 84 Am. St. 323, and cases cited, 51 Cent. L. J. 465, and note pp. 469, 470; New York, etc., Ins. Co. v. Armstrong, 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997, 34 Cent. L. J. 109.

It is true that in this case there was no statute making the purchase of votes a crime, and that we have no crimes in this State except those provided by statute, but bribery at elections was a crime at common law, as to the bribe

giver and the bribe taker. *Rex* v. *Pitt,* 3 Burr. 1335, 1338-1340; 1 Russell, Crimes (6th ed.), 444; Cushing, Law & Prac., §189; *Baum* v. *State,* 157 Ind. 282, 285, 286, 55 L. R. A. 250, and authorities cited. While the one who buys or advises, aids or abets in, vote buying, or procures the same to be done, is not guilty of the crime of bribery, under §2329 Burns 1901, such conduct is wrong and immoral. One who buys a vote commits a wrongful, immoral, and iniquitous act—a public wrong, because it affects the whole community. Public policy forbids that the vote buyer or vote seller should profit by such wrongful act, or found any claim upon such iniquity, whether made a crime by statute or not. Broad, therefore, as are the terms of §2330 Burns 1901, it must be construed so as not to contravene the principles of public policy. As said §2330, *supra,* contains no express provision to the effect that the vote buyer and vote seller are entitled to the benefit thereof, it is clear from what we have said, and the authorities cited, that neither can recover said reward, although the vote buyer furnished the testimony which secured the conviction of the vote seller.

*State, ex rel.,* v. *Schoonover,* 135 Ind. 526, 21 L. R. A. 767, is cited by appellee as supporting the construction of §2330, *supra*—that the vote buyer comes within its provisions. In that case the vote seller brought an action under the act of 1889 (Acts 1889, p. 360, §§6325-6339 Burns 1894), to recover $300 and attorney's fees from the person who bought his vote. That act, however, provided in express terms that the vote buyer, and those "aiding, abetting, counseling, encouraging or advising such acts [vote buying, etc.], shall thereby become liable jointly and severally to the" vote seller in the sum of $300 and reasonable attorney's fees, in an action to be brought in the name of the State on the relation of the said vote seller. Said act was held constitutional, and the recovery by the vote seller thereunder against the vote buyer was sustained. Nothing

that we have said or held in this case is in conflict with what was decided in *State, ex rel.,* v. *Schoonover, supra.*

It is clear that the said paragraphs of answer were sufficient to withstand the demurrer for want of facts. As the fourth paragraph of answer alleges facts sufficient to constitute a defense to the action, the mere fact that it purports to be only a partial answer does not render it insufficient as to such part.

Judgment reversed, with instructions to overrule the demurrer to the second, third, fourth, and fifth paragraphs of answer.